### KEARNEY v. COLEMAN et al.

(Supreme Court, Appellate Division, First Department. June 9, 1905.)

CONTRACTS FOR EXCAVATION—EXTRA WORK—EVIDENCE.

Evidence in an action by a subcontractor who had undertaken to do excavation for a dam, including disposal of the earth, *held* insufficient to show that he did any extra work of refilling.

Appeal from Trial Term, New York County.

Action by James Kearney, receiver, against James S. Coleman and another. From a judgment dismissing the complaint at the close of plaintiff's case, he appeals. Affirmed.

Argued before HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Edward P. Mowton, for appellant.
David McClure, for respondents.

HATCH, J. This action is brought to recover a sum claimed to be due for extra work performed by Arthur McMullen & Co., a copartnership, under a written contract with the defendants. The firm of McMullen & Co. was dissolved pursuant to an interlocutory judgment, and the plaintiff was duly appointed receiver

of the partnership assets and property, and in his representative capacity brings this action.    The complaint avers that the defendants Coleman and Ryan are the sole surviving members of the firm of Coleman, Ryan & Brown; that the defendant firm had entered into a contract with the city of New York for the construction of the Croton dam; that plaintiff's firm entered into a subcontract with the defendant firm for the performance of work required to be done under the contract between the city of New York and the defendants; that for such work the defendant firm agreed to pay plaintiff's firm a sum equal to 90 per cent. of the price which they received from the city; that the work thus performed by plaintiff's firm was extra work for refilling required to be done by the defendants under their contract with the city.    It was admitted by the answer, and also upon the trial, that the quantity of refilling for which the defendants' firm was paid, and to which the plaintiff's firm claim to be entitled, as it did the work, was 17,100 cubic yards, amounting to $4,275, 90 per cent. of which, amounting to the sum of $3,847.50, the plaintiff claims to be entitled to recover.

So far as material to a disposition of the present controversy, the defendants' contract with the city provided that: ·

"The materials excavated must be deposited in such a manner, at such places and at such distances from the excavations as shall be directed or approved by the Engineer.    All work done under this head to be measured in excavation."

The contract providing for earth excavation was as follows:

"(c) For earth excavation, including the disposal of it, and all work incidental thereto, per cubic yard, the sum of sixty-one cents.

"(cc) For earth excavation in vertical trenches, including the disposal of it and all work incidental thereto, per cubic yard, the sum of ninety-five cents.

"(d) For refilling and embankment, in place and all work incidental thereto, per cubic yard the sum of twenty-five cents.

"(f) For rock excavation, including the disposal of it and all the work incidental thereto, per cubic yard, the sum of one dollar and ninety-five cents."

The plaintiff's firm subcontracted with the defendants' firm to do the work provided for in subdivisions "c," "cc," and "f," including the disposal of the material excavated.    The subcontract fixed the price which the plaintiff's firm was to receive for such work, and further provided that for all extra work ordered by the chief engineer the plaintiff's firm was to be paid by the defendants' firm 90 per cent. of the price that the latter firm should receive from the city.    It was conceded upon the trial that the plaintiff's firm deposited certain of the material which it had excavated upon an embankment, and did this under the direction of the chief engineer; and it was further conceded that the defendants' firm had been paid by the city for all refilling, and that they had paid no part of the sum so received to the plaintiff's firm or to the plaintiff.

The question presented is to determine whether the work performed under the subcontract by the plaintiff's firm in dumping this material upon the embankment, and in refilling in connection therewith, entitled it to 90 per cent. of the sum received by the defendants' firm for refilling and embankment.    It is not claimed by the · plaintiff that his firm did any part of the work upon the embank-

ment, or otherwise, save in refilling to the extent of 17,100 cubic yards. His claim is that the items of refilling and embankment are separable in their character, and that the work performed upon the embankment was quite distinct from the refilling for which the contract provided. The subcontract with the plaintiff's firm provided that the parties to it should be governed by the conditions of the defendants' contract with the city; and, in determining whether the contention of the plaintiff is correct, it becomes necessary to examine that part of the contract in relation to refilling and embankment. Upon these subjects that contract provides:

"(27) The embankments for the main and temporary dams shall start from a well prepared base, stepped on sloping ground, all embankments and all refilling shall be carried up in horizontal layers not exceeding six inches in thickness; each layer to be carefully rolled with a heavy grooved roller and to be well watered. The earth to be well rammed with heavy rammers at such points as cannot be reached by the roller.

"Special care shall be required in running the earth close to the sheet piling and to the masonry which shall always be kept at least two feet higher than the adjoining embankment, unless otherwise permitted. The embankments of the dam shall be kept at an uniform height, on both sides of the masonry, during construction, unless otherwise permitted.

"(28) Ample means shall be provided for watering the banks, and any portion of the embankment to which a layer is being applied shall be so wet, when required, that water will stand on the surface. The Contractor shall furnish at his own cost the necessary steam or other power for forcing the water upon the bank, if the Engineer find that other means of transportation and distribution of the water are not sufficient.

"(29) The embankments of the dam, or any slopes that may be so ordered shall be formed with an extra width of twelve inches, this surplus quantity of earth shall be afterwards removed and estimated as excavation [item "c"], and the surface left shall be dressed smoothly to receive the broken stones, supporting the paving or the soil."

Paragraphs 30, 31, 32, and 33 make other particular provision for the quality of the material, which excludes all things perishable; for compact material upon the upstream side, and more porous material on the downstream side; for mixing of the material to be used upon the embankment, and requiring the matter to be thrown with shovels, in order to effect a thorough mixture; also that the borrow pits from which the material was to be taken should be acceptable to the engineer, and free from all bowlders, trees, stumps, and other matter not acceptable for refilling and embankments. Paragraph 34 is as follows:

"(34) The price herein stipulated for refilling and embankments [clause o, item "d"] is to include the cost of excavating and taking the materials used therefor from the dumps or from the borrow pits, of supporting draining and maintaining the excavations, of selecting, mixing and transporting the materials, of rolling and watering, and of doing all work necessary for placing the same as hereinbefore specified."

It is apparent, therefore, from the terms of the contract, that, in the items of refilling and embankment, the mere excavation and deposit of the material in particular places as it was required was a small part of the work to be performed, for by specific requirement a great amount of work was necessary in making the material suitable for the purpose, and solidifying it upon the embankment after it had been placed. The work required as to the embankment

proper shows that the mere deposit from the borrow pits of the material was but a small part of the work required to be done. The refilling in particular places may have been done with much less work than that required upon the embankment, but the price per cubic yard for each was the same, and doubtless made so to equalize the cost, as the refilling might be done with much less labor and expense than the building of the embankment required. The two were evidently intended to be embraced in one price, and the particular specifications clearly so show. Manifestly, the plaintiff's firm did not become entitled to compensation for merely depositing the excavated material upon the embankment. They were required, under the terms of the contract, to deposit it as directed by the engineer. The place of deposit was not material to them, unless a haul was required of a considerable distance, for which the contract specified, but which is not material to this controversy. All that the plaintiff has shown that his firm did was to excavate and deposit this material upon the embankment; and this work was a part of their contract for excavation, and could not be charged for as extra work, as it required nothing to be done beyond that for which their contract for excavation provided.

The only proof that tends in the slightest degree to show that the plaintiff's firm performed any extra work is found in the testimony of Gowan, who was an engineer employed by the city upon the work in question. His testimony is to the effect that a section of the work was filled by materials taken from the excavation by plaintiff's firm, and he adds:

"I think it was graded to a reasonable extent. I think it was brought up to an elevation—a certain elevation—and reasonably well graded. That is my recollection about it. After that I made my certificate of the dimensions."

There is nothing in this testimony which certainly shows that the grading of the material thus dumped was anything more than a mere distribution of it at the time it was dumped. But if it could be presumed therefrom that the plaintiff's firm did any actual work of grading up the material dumped by them, it is not shown how much time or labor was expended thereon, or how much it was worth. It was quite independent of the work required to be done in forming the embankment, and its cost or value is not made to appear.

We conclude, therefore, that the plaintiff did not show that his firm did any extra work upon the embankment or in the refilling, and that the grading which was done is not shown to have been of anything more than nominal value. Consequently there is no basis for the claim that the plaintiff or his firm was entitled to any substantial sum for extra work, as it did none that can be measured.

The dismissal of the complaint was therefore correct, and the judgment should be affirmed, with costs. All concur.